# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**MONTGOMERY WALKER,**
                    **Petitioner,**

    **v.**                            **Case No. 18-C-0147**

**WILLIAM POLLARD, Warden,**
                    **Respondent.**
_____

## <u>DECISION AND ORDER</u>

Before me now are two matters: the merits of Montgomery Walker's petition for a writ of habeas corpus under 28 U.S.C. § 2254, and the respondent's motion for reconsideration of my earlier denial of his motion to dismiss.

## I. BACKGROUND

In March 2012, following a jury trial, Walker was convicted in a Wisconsin court of first-degree sexual assault of a child under age twelve. In its opinion affirming Walker's conviction, the Wisconsin Court of Appeals described the facts of the case as follows:

> According to the criminal complaint, Walker's eight-year-old granddaughter was in her bedroom watching a movie and coloring when Walker came into her room, took her by the hand, and led her into the laundry room. Walker then took off her pants and underwear and carried her into the bathroom where he placed her on the sink and told her to open her legs. The granddaughter told police that Walker then "put his privacy" (identified as his penis) "into her privacy" (identified as her vagina). Walker later returned to her room and motioned to her to follow him. He took her by the arm, led her to the bathroom where he removed her pants and underwear, and again "put his privacy into her privacy."

> A DNA report concluded semen found on two spots on the victim's underwear matched Walker's DNA. Walker claimed innocence and indicated to the circuit court that he intended to present an alibi defense. Walker stated he wanted a lawyer to take his case to trial. Walker

subsequently asked the court to allow his trial counsel to withdraw as he did not think counsel supported him in presenting his innocence claim. The court rejected his argument.

At trial, Walker presented a defense in which he denied sexually assaulting the victim and he presented an explanation regarding how his semen came to be on the victim's underwear. Walker's wife testified that she heard Walker tell the victim to go to bed and she heard the victim stomp down the hallway and slam the door. Walker's wife further testified Walker got into bed with her and she was aware that he was sleeping next to her until 6 a.m. She claimed to be aware of where Walker was during the entire time and that he had no contact with the victim.

Walker's wife also testified that she and Walker had sex the day before the assault. She wiped semen off herself with a sanitary pad and threw it in the wastebasket in the bathroom. She testified her granddaughter had the habit of playing in the bathroom garbage. Walker similarly testified that he had sex with his wife the day prior to the assault and believed the victim's mother set him up. Walker believed the victim or her mother wiped his semen from his wife's sanitary pad onto the victim's underwear.

*State v. Walker*, No. 2013 AP 2193-CR, 2014 WL 4192791, at *1 (Wis. Ct. App. Aug. 26, 2014).

The jury convicted Walker, and the trial court sentenced him to twenty-five years' initial confinement and seven years' extended supervision. At this point, the public defender appointed Attorney Urszula Tempska to represent Walker on appeal.

In Wisconsin, to raise certain issues on appeal, including claims of ineffective assistance of trial counsel, a defendant must first file a motion for postconviction relief in the trial court. *See, e.g. State ex rel. Rothering v. McCaughtry*, 205 Wis. 2d 675, 677–78 (Ct. App. 1996). If the motion alleges facts that, if true, would entitle the defendant to relief on a claim of ineffective assistance of trial counsel, then the trial court must hold an evidentiary hearing, known as a *Machner* hearing. *See, e.g., State v. Allen*, 274 Wis. 2d 568, 576–77 (Ct. App. 2004); *State v. Machner*, 92 Wis.2d 797, 804 (Ct. App.1979).

A defendant's appellate counsel is usually the attorney who files the postconviction motion, and Wisconsin cases will often describe the same attorney as "postconviction counsel" and "appellate counsel." When counsel prosecutes a postconviction motion in the trial court, she acts as postconviction counsel. When she files briefs and argues the case on appeal, she acts as appellate counsel.

Attorney Tempska initiated Walker's direct appeal by filing a motion in the trial court seeking postconviction relief. The motion raised two issues: (1) Did the trial court violate Walker's right to be represented by counsel with whom he could communicate effectively when it denied trial counsel's motion to withdraw; and (2) did trial counsel render ineffective assistance during plea negotiations, which resulted in Walker's rejecting a favorable plea deal?

Regarding the first issue, the postconviction motion alleged that the relationship between Walker and his trial counsel, Alvin Richman, deteriorated during the representation, until both men felt that they were irreconcilably conflicted and unable to communicate. Prior to trial, Richman filed a motion to withdraw, citing irreconcilable differences with Walker as the reason. The trial court held a hearing on this motion and found that, despite their differences, Walker and Richman could communicate effectively. Thus, the trial court denied the motion to withdraw. In the postconviction motion, Walker alleged that, in denying the motion, the trial court applied the wrong legal standard, made clearly erroneous factual findings, and rendered a decision that could not have been reached by a rational judge applying the correct legal standard.

Regarding the second issue, the postconviction motion alleged that trial counsel did not explain, or ensure that Walker understood, the elements of the offense during or

prior to plea negotiations. The motion alleged that, during the times when the prosecutor's plea offer was on the table, Walker misunderstood the statute's definition of "sexual intercourse" and how the physical evidence supported the state's case. The statute defined "sexual intercourse" as any intrusion, however slight, of any part of a person's body into the genital opening of another, and it specified that the emission of semen is not required. *See* Wis. Stat. § 948.01(6). According to the motion, Walker believed that, to prove him guilty, the state was required to show that he fully inserted his penis into the victim's vagina, repeatedly thrusted his penis inside her vagina, and ejaculated semen inside her vagina. Walker claimed that he believed the state's physical evidence did not show that he did these things. He alleged that although the state's evidence showed some damage inside the victim's vagina and semen on the victim's underwear, he believed the state had to show that the victim sustained greater damage to her vagina than was found and that semen was present inside her vagina. Walker alleged that, had trial counsel explained the definition of "sexual intercourse" to him and illustrated how the state's physical evidence matched the definition, he would have accepted the prosecutor's offer to reduce the charge to second-degree sexual assault of a child in exchange for his pleading guilty.

The trial court denied Walker's postconviction motion without a hearing. As to the first issue, the court concluded that counsel's motion to withdraw was properly denied. On the second issue, the court concluded that Walker had not shown that his alleged misunderstanding of the definition of "sexual assault" caused him to reject the plea offer. The court noted that Walker's defense at trial was that he had had no sexual contact with the victim at all rather than that his sexual contact with the victim did not rise to the

level of sexual intercourse. The court stated that Walker's claim that he would have pleaded guilty if only he knew the correct definition of sexual intercourse "fl[ew] in the face of" his defense at trial. ECF No. 33-2 at p. 76 of 103. The court also observed that the trial judge explained the meaning of "sexual intercourse" on the first day of trial, while Walker was in court, and yet Walker did not at that time indicate that he wanted to accept the state's plea offer. For these reasons, the court concluded that even if trial counsel performed deficiently in failing to advise Walker of the definition, Walker did not show prejudice, in that he did not show that, but for the deficient advice, he would have pleaded guilty.

Walker, still represented by Tempska, appealed to the Wisconsin Court of Appeals and raised the same two issues that he had raised in his postconviction motion. The Wisconsin Court of Appeals rejected both claims. Regarding trial counsel's motion to withdraw, the court found that the record supported the trial court's finding that Walker and Richman could communicate effectively. Regarding trial counsel's failure to properly advise Walker of the definition of "sexual intercourse," the court found that "the record conclusively demonstrates Walker would have proceeded to trial and continued to claim his innocence whether or not counsel informed him that sexual intercourse did not require penetration or the emission of semen." *State v. Walker*, 2014 WL 4192791, at *2. Like the trial court, the court of appeals observed that Walker's defense at trial was that he had had no sexual contact with the victim at all. The court implied that therefore Walker's alleged misunderstanding of the definition of "sexual intercourse" could not have affected his decision to proceed to trial. Also like the trial court, the court of appeals found that the definition of "sexual intercourse" was read in open court and in

Walker's presence shortly after Walker had last rejected the state's plea offer. The court reasoned that if the alleged misunderstanding of the definition of "sexual intercourse" affected Walker's decision to reject the plea offer, he could have attempted to resurrect the plea offer after he heard the definition. Because he did not do so, the court reasoned, counsel's alleged failure to explain the definition to him could not have affected his decision to continue with the trial. The court concluded that, for these reasons, Walker had not suffered prejudice from trial counsel's alleged deficient performance.

Walker sought discretionary review by the Wisconsin Supreme Court. That court denied review on December 18, 2014.

On November 3, 2015, Walker filed a federal habeas petition in this court. *See* E.D. Wis. Case No. 15-C-1306. He asked the judge to whom that case was assigned to employ the stay-and-abeyance procedure of *Rhines v. Weber*, 544 U.S. 269 (2005), so that he could exhaust his state-court remedies with respect to certain grounds for relief. The judge denied Walker's request. Following the denial, Walker sought dismissal of his petition without prejudice so that he could exhaust his unexhausted claims. The court granted that request and dismissed the petition without prejudice on May 24, 2016.

On February 2, 2016, while his first federal petition was pending, Walker filed a state postconviction motion under Wis. Stat. § 974.06 in the Milwaukee County Circuit Court.[1] In this motion, Walker alleged that his trial counsel rendered ineffective

---

[1] The motion was file-stamped February 4, 2016, but the respondent concedes that the petitioner mailed the motion from prison on February 2, 2016, and that therefore it should be treated as filed on February 2, 2016. *See* ECF No. 17 at p.8.

assistance by failing to object to a juror that Walker thought was biased against him. According to Walker, the juror (Juror 12) was a former upstairs neighbor of Walker's mother who once got into a verbal altercation with Walker. The altercation occurred when Walker confronted the juror about blocking his mother's driveway. Walker alleged that the altercation ended when the juror told Walker that he was "going to blow [Walker's] damn head off." Aff. of Montgomery Walker ¶ 6, ECF No. 10.

During voir dire, Walker did not recognize the juror because he had grown a full beard since the last time Walker had seen him. When the court asked the prospective jurors whether any of them knew Walker, the juror in question did not raise his hand. Thus, the juror was seated without objection. However, on the second day of trial, Walker's sister recognized the juror and informed Walker and his trial counsel that he was a long-time family "foe" who had in the past threatened to kill Walker. *Id.* ¶ 8. According to Walker, his trial counsel shrugged off this information, saying that it was too late to stop the trial, and counsel did not bring Walker's claim of juror bias to the court's attention. The juror eventually became the foreperson of the jury. Walker alleged in his postconviction motion that trial counsel's failure to bring the information about the juror's potential bias to the court's attention amounted to ineffective assistance.

Also in his § 974.06 motion, Walker alleged that his postconviction/appellate counsel rendered ineffective assistance by failing to raise, in her postconviction motion and on appeal, trial counsel's ineffectiveness in failing to bring Walker's claim about the juror to the trial court's attention. In the motion, Walker alleged that he told appellate counsel about trial counsel's failure to act on the information about the juror but that she ignored this issue.

7

At the time Walker filed his § 974.06 motion, he also filed his own affidavit attesting to the above facts and an affidavit from his mother in which she states, among other things, that the juror lived above her for approximately two years. Walker also filed a motion to subpoena the witnesses that he intended to call at an evidentiary hearing, including Attorneys Richman and Tempska. *See* ECF No. 17-9 at pp. 31–46 of 46.

The trial court denied Walker's § 974.06 motion without holding an evidentiary hearing, concluding that Walker had failed to allege facts that, if true, would warrant relief. Walker then appealed to the Wisconsin Court of Appeals, which affirmed. In its opinion, the court first invoked a state procedural rule stating that, absent a "sufficient reason," a person convicted of a crime may not raise a claim under § 974.06 that could have been raised in a prior postconviction motion or on direct appeal. *See State v. Escalona-Naranjo*, 185 Wis. 2d 168, 185 (1994). Although the court did not expressly state this, it is apparent from the context of the opinion that the court would deem Walker's claim of ineffective assistance of trial counsel barred by *Escalona-Naranjo* unless Walker could demonstrate a sufficient reason for failing to raise that claim during direct review. The court then noted that ineffective assistance of postconviction/appellate counsel may constitute a sufficient reason under *Escalona-Naranjo*.

At this point, the court of appeals examined whether Walker had sufficiently pleaded a claim of ineffective assistance of postconviction/appellate counsel. The court observed that when a movant alleges that postconviction or appellate counsel was ineffective in failing to raise an issue, Wisconsin law requires the movant to allege that the unraised issue was "clearly stronger" than the raised issue. *See State v. Romero-*

*Georgana*, 360 Wis. 2d 522, 545–46 (2014) (adopting "clearly stronger" standard for claims of ineffective assistance of postconviction counsel); *State v. Starks*, 349 Wis. 2d 274, 308 (2013) (adopting "clearly stronger" standard for claims of ineffective assistance of appellate counsel). The court then recognized that Walker alleged that the juror-bias issue was "clearly stronger" than the issues Tempska raised in the postconviction motion, but it faulted him for failing to "offer any support for his assertion" that the juror-bias issue was clearly stronger than the issues postconviction originally raised. *State v. Walker*, No. 2016 AP 957, 2017 WL 3484968, at *3 (Ct. App. Aug. 15, 2017). The court also observed that Walker "failed to allege that appellate counsel's failure to raise [the juror-bias issue] cannot be explained or justified." *Id.* The court then wrote that "[o]n this basis alone, Walker is prohibited from advancing" his claim of ineffective assistance of postconviction/appellate counsel. *Id.*

The court of appeals then addressed "the merits of Walker's assertions." *Id.* Walker had alleged in his § 974.06 motion and supporting affidavits that the juror lived upstairs from his mother for two years, that he and the juror had had an altercation over a parking space in which the juror threatened to blow Walker's head off, that the juror had knowingly deceived the court during voir dire as to his knowledge of Walker, that Walker did not recognize the juror during voir dire because the juror had grown a full beard since he had last seen him, that on the second day of trial Walker's family recognized the juror and brought the juror's prior history with Walker to trial counsel's attention, that trial counsel told Walker and his family that it was too late to stop the trial, that the juror eventually served as the foreperson of the jury, and that Walker told his postconviction/appellate counsel about all of the above but she ignored him. The court

of appeals found that these allegations were insufficient to warrant an evidentiary hearing on whether trial counsel was ineffective in failing to inform the trial court of the juror's potential bias or on whether postconviction/appellate counsel was ineffective in failing to raise trial counsel's ineffectiveness as an issue in the postconviction motion. The court reasoned as follows:

> Walker and his mother both submitted affidavits explaining their connection to Juror 12: that Walker's mother lived in the same duplex as Juror 12 for approximately two years, in particular noting the altercation that occurred between Walker and Juror 12, including the alleged threat against Walker by Juror 12. However, Walker admits that neither Walker nor any member of his family immediately identified Juror 12 upon seeing him in court.

> Additionally, Walker provides very few details relating to the altercation and threat. Walker repeatedly refers to Juror 12 as a "foe" based on an alleged single incident that occurred at some date in the past. However, the circuit court, in its decision, found that:

>> The defendant does not allege when or how long his mother and Juror 12 were neighbors, how many total times he interacted with Juror 12, when (or how long ago) the dispute over the parking space took place or how long the dispute lasted. He also does not describe what happened with any particularity. The affidavit leaves open questions of whether the defendant and Juror 12 would have recognized each other at the time of the incident, whether they were in (or outside of) their vehicles at the time of the alleged dispute, or whether they had made eye contact. It is unclear from the facts alleged how (or if) the defendant identified Juror 12 at the time of the incident or whether Juror 12 had any reason to be able to identify the defendant.

> The circuit court further found that Walker failed to allege sufficient material facts for the circuit court to assess whether Juror 12 knowingly deceived the court by failing to inform the circuit court that he knew Walker.

>> The defendant himself admits that he did not recognize Juror 12 by name or appearance until the second day of trial, and then only recognized him . . . after being reminded of him by his family. He also alleged that Juror 12's appearance had

changed in the unspecified amount of time that had passed
since the parking spot dispute. Under these circumstances
the defendant's assertion that Juror 12 knowingly lied to the
court in order to hide his alleged bias is merely a conclusory
allegation that is unsupported by the facts alleged.

As a result, the circuit court denied Walker's motion without a
hearing, finding that his motion and supporting affidavits failed to "allege
sufficient material facts for the court to meaningfully assess whether there
is any reasonable probability that Juror 12 would have even remembered
this incident, let alone held a bias against the defendant or his family."
Additionally, the circuit court found that Walker failed to "provide sufficient
material facts"—for example, who, what, where, when, why, and how—
"that, if true, would entitle him to relief." Accordingly, the circuit court, in
finding that he was not denied an impartial jury or the effective assistance
of trial or appellate counsel, properly denied Walker's claim of juror bias.

*Id.* at *4–5.

Next, the court of appeals faulted Walker for failing to discuss "the substance of
appellate counsel's original postconviction motion." *Id.* at *5. This appears to be a
reiteration of the court's earlier observation that Walker had failed to offer support for his
assertion that the juror-bias issue was clearly stronger than the issues Tempska actually
raised. In its next sentence, the court of appeals stated that because there was
"overwhelming evidence against Walker," Walker could not have been prejudiced by
trial counsel's error in not advising the trial court that Juror 12 may have been biased.
*Id.* at *5. The court thus agreed that Walker "did not adequately plead" his ineffective-
assistance claims and affirmed the trial court's decision to deny the § 974.06 motion
without an evidentiary hearing. *Id.* at *5–6.

Walker again petitioned for discretionary review by the Wisconsin Supreme
Court, and that court again denied review. His petition for review was denied on
December 12, 2017.

11

On January 29, 2018, this court received Walker's current federal petition through the court's electronic-filing system. The petition includes Walker's declaration that he placed it in the "prison mailing system" on the same date that the court received it. ECF No. 1 at p.15. The petition alleges three grounds for relief—technically four, since ground three contains two claims. In ground one, Walker alleges that the trial court erred when it denied his trial counsel's pretrial motion to withdraw. In ground two, Walker alleges that his trial counsel rendered ineffective assistance during plea negotiations by failing to adequately advise him of the definition of "sexual intercourse" and the strength of the state's case against him. In ground three, Walker alleges that his trial counsel rendered ineffective assistance when he failed to bring the issues regarding Juror 12 to the court's attention. He also alleges that his appellate counsel rendered ineffective assistance by failing to raise a claim of ineffective assistance of trial counsel based on trial counsel's failure to object to Juror 12.

During earlier proceedings in this case, the respondent moved to dismiss the petition on the ground that it was filed outside the one-year limitation period of 28 U.S.C. § 2244(d). In the alternative, the respondent argued that ground three of the petition—which alleges that Attorneys Richman and Tempska rendered ineffective assistance in failing to raise the juror issue—must be dismissed as procedurally defaulted. I denied this motion in order dated January 8, 2019. Since that time, the respondent has filed a motion for reconsideration of my denial of the motion to dismiss, and the parties have briefed the merits of Walker's claims. I address these matters below.

## II. DISCUSSION

### A.     Motion for Reconsideration

#### 1.     Timeliness

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") establishes a one-year time limitation for a state prisoner to file a federal habeas corpus petition. That year runs from the latest of four specified dates. 28 U.S.C. § 2244(d)(1). In the present case, there is no dispute that the relevant date is provided by § 2244(d)(1)(A), "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." The time for Walker to seek direct review expired on March 18, 2015. That is so because the Wisconsin Supreme Court denied Walker's petition for discretionary review in his direct appeal on December 18, 2014, and the time for Walker to seek certiorari review in the Supreme Court of the United States expired 90 days later without Walker's having sought certiorari. *See Gonzalez v. Thaler*, 565 U.S. 134, 150 (2012) (confirming that where petitioner does not seek certiorari during direct review, conviction becomes final for purposes of § 2244(d)(1)(A) when time for seeking certiorari expires); S. Ct. R. 13.1 (petition for certiorari must be filed within 90 days of entry of judgment at issue). Thus, the federal limitation period began to run on March 19, 2015, the day after the time for seeking certiorari expired. *See Anderson v. Litscher*, 281 F.3d 672, 675 (7th Cir. 2002) (federal period begins running day after time to seek certiorari expires). As of that date, Walker had one year—until March 18, 2016—to file his federal petition. *See Johnson v. McBride*, 381 F.3d 587, 588 (7th Cir. 2004); *see also United States v. Marcello*, 212

F.3d 1005, 1010 (7th Cir. 2000) (adopting "anniversary method" for determining end of one-year period under analogous provision of 28 U.S.C. § 2255).

Walker did not file his current federal petition until January 29, 2018.[2] However, on February 2, 2016, he filed a motion under Wis. Stat. § 974.06 in the Wisconsin trial court. Under 28 U.S.C. § 2244(d)(2), "[t]he time during which a properly filed application for State post-conviction or other collateral review . . . is pending shall not be counted toward" the one-year period of limitation. The respondent concedes that Walker's § 974.06 motion qualified as a properly filed application for state collateral review. ECF No. 17 at 8. Thus, the federal limitation period stopped running on February 2, 2016, the date on which this motion was filed. By that time, Walker had used 320 days of the one-year federal period (March 19, 2015 through and including February 1, 2016).[3]

State proceedings relating to Walker's § 974.06 motion lasted until December 12, 2017, the date on which the Wisconsin Supreme Court denied his request for

---

[2] For purposes of this opinion, I assume that Walker did not file his petition until January 29, 2018, which, Walker declares, is the date on which he deposited the petition in his prison's mailing system. However, in response to the respondent's motion to dismiss, Walker claimed that he attempted to present his petition to prison officials for electronic filing as early as January 23, 2018 and that those officials failed to act on his request for electronic filing until January 29. If this is true, then it is arguable that, under the prison mailbox rule, Walker's petition should be deemed to have been filed on January 23, 2018. *See Armstrong v. Louden*, 834 F.3d 767, 769 (7th Cir. 2016); *Taylor v. Brown*, 787 F.3d 851, 858–59 & n.10 (7th Cir. 2015). Because I will stand by my earlier conclusion that Walker's petition is timely even if it is considered to have been filed on January 29, 2018, I do not need to determine whether Walker should be credited with an earlier filing date. However, I note that, if the respondent's motion for reconsideration were granted as to timeliness, Walker would be entitled to an evidentiary hearing on whether he attempted to file electronically as early as January 23, 2018.

[3] Walker filed his first federal petition on November 3, 2015, which was later dismissed without prejudice. The time during which the first petition was pending is not tolled. *See Duncan v. Walker*, 533 U.S. 167, 181–82 (2001).

discretionary review. The federal period resumed running at that time. *See Lawrence v. Florida*, 549 U.S. 327, 332 (2007). Walker filed his current petition on January 29, 2018.

The respondent contends that Walker's one-year federal period expired on Thursday, January 25, 2018, and that therefore his petition was filed four days late. However, in my order denying the motion to dismiss, I concluded that the respondent's computation of the due date for Walker's petition was based on two errors: (1) that Walker had 365 days in his one-year federal period, and (2) that the federal period resumed running on the same date that the Wisconsin Supreme Court denied his petition for discretionary review in his § 974.06 proceeding.

Regarding the first error, I concluded that Walker actually had 366 days in his one-year period. Walker's conviction became final by the conclusion of direct review on March 18, 2015. Therefore, absent tolling, his federal petition would have been due on the anniversary of this date, March 18, 2016. *See Johnson*, 381 F.3d at 588; *Marcello*, 212 F.3d at 1010. But 2016 was a leap year, and thus Walker's original federal period consisted of 366 days. *See Marcello*, 212 F.3d at 1010 (holding that, under § 2255, anniversary date is the last date to file even when intervening period includes the extra leap-year day). Accordingly, for purposes of computing Walker's revised due date once statutory tolling was accounted for, I credited him with 366 total days in his federal one-year period. *See Harper v. Ercole*, 648 F.3d 132, 134 (2d Cir. 2011) (crediting petitioner with 366 days when original one-year period included a leap-year day).

In his motion for reconsideration, the respondent argues that I erred in crediting Walker with 366 days in his one-year period. According to the respondent, I "doubled counted" the extra leap-year day. ECF No. 30 at 4. The respondent contends that

because the leap-year day was part of the tolling period, it should not have been counted again as part of Walker's remaining federal period. But this argument is based on the faulty premise that the court "counts" the days in the tolling period. In fact, the court "counts" only those days during which the federal limitation period was not tolled. *See* 28 U.S.C. § 2244(d)(2) (providing that time during which postconviction motion is pending "shall not be counted"). That is, to determine whether the petition was timely, the court takes the total number of days in the original limitation period and subtracts any days in which tolling was not in effect. The tolled days are simply ignored altogether. Here, Walker's original limitation period consisted of 366 days, *see Harper*, 648 F.3d at 134, and Walker filed his federal petition before 366 non-tolled days had lapsed. Accordingly, his petition was timely.

The respondent does not explain why the extra leap-year day should be counted towards the federal limitation period when no other day in the tolling period is so counted. Moreover, there is no principled reason to treat the leap-year day differently than any other day in the tolling period. If a leap-year day in the tolling period should be counted, then every other day in the tolling period should also be counted—there is nothing special about the leap-year day for tolling purposes. But counting all the days in the tolling period towards the federal limitation period would eliminate tolling altogether. The respondent's argument thus produces an absurd result and must be rejected.

The second error I noted in the respondent's original motion was his belief that statutory tolling stopped, and the federal period resumed running, on December 12, 2017, the date on which the Wisconsin Supreme Court denied Walker's petition for discretionary review in his state collateral attack. In support of his position, the

respondent cited the Seventh Circuit's opinion in *Jones v. Hulick*, 449 F.3d 784, 788 (7th Cir. 2006). In that case, which involved statutory tolling under § 2244(d)(2), the court wrote that "the AEDPA statute of limitations clock began running again on February 5, 2003, when the Illinois Supreme Court denied [the petitioner's request for discretionary review]." *Id.* at 788. The respondent interpreted this passage as meaning that the day on which the state supreme court denies review counts toward the one-year federal limitation period. However, I concluded that this could not be what the passage meant, for in the very next sentence the court computed the relevant time period without counting the date on which the state supreme court denied review. Specifically, after stating that the clock began running again when the state supreme court denied review on February 5, 2003, the court stated that the habeas petition was not filed in federal court "until January 21, 2004, 350 days later." *Id.* But January 21, 2004 would be 350 days after February 5, 2003 only if February 5, 2003 were not counted as a day. If it were counted, then January 21, 2004 would be the 351st day. Thus, I concluded that *Jones v. Hulick* does not stand for the proposition that the day on which the state supreme court denies review in a collateral attack is counted toward the one-year federal period. I also reasoned that because an application for state collateral review is in fact still "pending" on the date on which the state supreme court denies review, that date must not be counted toward the federal period. Accordingly, I concluded that Walker's federal period resumed running again on December 13, 2017, the day after the Wisconsin Supreme Court denied his request for discretionary review of his state collateral attack.

In his motion for reconsideration, the respondent argues that I misapplied *Jones*. According to the respondent, the Seventh Circuit must have miscalculated the number of days between February 5, 2003 and January 21, 2004. ECF No. 30 at 6. But nothing in the opinion establishes that that is so. It is just as likely that the Seventh Circuit spoke imprecisely when it said that "the AEDPA statute of limitations clock began running again on February 5, 2003, when the Illinois Supreme Court denied [the petition for discretionary review]." *Jones*, 449 F.3d at 788. In any event, the difference between the clock's beginning to run again on February 5 or February 6 had no bearing on the timeliness of the petition in *Jones*, and thus the court had no reason to address the question of whether the date of the denial of discretionary review is included in the federal period. In other words, whatever the *Jones* court meant to express on this point would have been dicta.

Because the relevant passage of *Jones* is ambiguous and dicta, I focus instead on the language of § 2244(d)(2). In my prior opinion, I explained that because an application for state collateral review is in fact still pending on the date on which the state supreme court denies discretionary review, and because § 2244(d)(2) instructs courts not to count the time during which the application is "pending," the date on which the state supreme court denies discretionary review is not counted towards the federal limitation period. Notably, in his motion for reconsideration, the respondent does not contend that the language of § 2244(d)(2) supports his position. Thus, I will continue to exclude the day on which the Wisconsin Supreme Court denied Walker's petition for discretionary review from the time that counts towards the federal limitation period.

In sum, Walker allowed 320 days of his 366-day federal period to lapse before he filed his § 974.06 motion. Thus, when the period resumed running again on December 13, 2017, he had 46 days remaining. Using December 13, 2017 as day one, the 46th day was January 27, 2018. Because January 27, 2018 was a Saturday, the federal limitation period rolled forward to the following Monday. *See Johnson*, 381 F.3d at 588. This court received Walker's petition on that very Monday, and therefore his petition is timely.

### 2.    Procedural Default

In his original motion to dismiss, the respondent argued that ground three of Walker's petition—which contains Walker's claims of ineffective assistance of counsel relating to the juror issue—should be dismissed as procedurally defaulted. The key issue with respect to procedural default was whether the Wisconsin Court of Appeals' rejection of Walker's claim of ineffective assistance of postconviction/appellate counsel rested on an independent and adequate state ground. If it did, then both that claim and Walker's claim of ineffective assistance of trial counsel would have been procedurally defaulted, for under state law Walker could not proceed with his challenge to trial counsel's effectiveness without showing that postconviction/appellate counsel was ineffective in failing to raise trial counsel's ineffectiveness as an issue on direct appeal. *See State v. Escalona-Naranjo*, 185 Wis. 2d 168, 185 (1994).

In my decision on the motion, I concluded that the Wisconsin Court of Appeals' rejection of Walker's claim of ineffective assistance of postconviction/appellate counsel did not rest on an independent and adequate state ground. *See Coleman v. Thompson*, 501 U.S. 722, 729–30 (1991) (stating that independent-and-adequate-state-law doctrine

applies to habeas petitions). The court rejected the claim on the ground that Walker did not plead sufficient facts in his motion that, if accepted as true, would entitle him to relief under federal law. I concluded that because the pleading standard required the court to apply substantive federal law to the facts alleged to determine whether those facts, if true, would establish a right to relief under federal law, the court's decision necessarily involved an application of federal law and therefore was not based on an "independent" state-law ground.

In his motion for reconsideration, the respondent argues that I erred in concluding that the court's rejection of Walker's claim was not independent of federal law. According to the respondent, the court of appeals did not apply federal law to the facts alleged in Walker's motion. Instead, it looked to see only whether the motion contained enough material facts to enable the court to "meaningfully assess" the claim. In the respondent's view, the court of appeals essentially determined that Walker forfeited his claim of ineffective assistance of postconviction/appellate counsel by failing to adequately develop it in his motion. *See* ECF No. 30 at 8–9.

I do not think that when a court determines that a motion does not contain sufficient facts to enable the court to "meaningfully assess" a federal claim, the court has made a decision that is independent of federal law. In this case, however, if we understand the court of appeals' decision to be that Walker did not allege enough in his § 974.06 motion to enable the court to meaningfully assess his claim of ineffective assistance of appellate counsel, then the court applied its procedural rule in an extremely unexpected way. Therefore, the court's procedural ruling would not be "adequate" to support the judgment, even if it was "independent" of federal law.

20

To be "adequate," a state procedural rule must be "firmly established and regularly followed." *Lee v. Kemna*, 534 U.S. 362, 376 (2002). "There are, however, exceptional cases in which exorbitant application of a generally sound rule renders the state ground inadequate to stop consideration of a federal question." *Id.* "A basis of decision applied infrequently, unexpectedly, or freakishly may be inadequate, for the lack of notice and consistency may show that the state is discriminating against the federal rights asserted." *Prihoda v. McCaughtry*, 910 F.2d 1379, 1383 (7th Cir. 1990).

The procedural rule that the state courts applied here is the rule that a defendant is not entitled to hearing on a claim of ineffective assistance of postconviction counsel unless, in his motion, the defendant "provide[s] sufficient material facts that, if proven, demonstrate an entitlement to the relief sought." *State v. Balliette*, 336 Wis. 2d 358, 364 (2011). Wisconsin cases explain that, to allege sufficient material facts, the motion should satisfy "the five 'w's' and one 'h' test, 'that is, who, what, where, when, why, and how." *Id.* at 383 (quoting *State v. Allen*, 274 Wis. 2d 568, 585 (2004)). The Wisconsin Supreme Court has instructed that a motion that satisfies this test "will necessarily include sufficient material facts for reviewing courts to meaningfully assess a defendant's claim." *Id.* (quoting *Allen*, 274 Wis.2d at 585).

In finding that Walker's motion did not satisfy the five "w's" and one "h" test, the Wisconsin Court of Appeals adopted the reasoning of the trial court. *State v. Walker,* 2017 WL 3484968, at *4–5. But the trial court did not identify any specific "w" or "h" that Walker failed to plead. Indeed, it is difficult to find any facts missing from Walker's motion that would prevent the court from "meaningfully assessing" his claim of ineffective assistance of counsel. Walker alleged that a juror who knew him and who

had previously threatened to kill him became the foreperson of the jury that convicted him. He alleged that he told his trial counsel that the juror knew him and previously threatened to kill him, and that trial counsel refused to bring the juror's potential bias to the court's attention. Walker further alleged that, after he was convicted, he told his postconviction/appellate counsel the facts relating to the juror and that, like trial counsel, appellate counsel also failed to act. Finally, Walker alleged that the presence of a biased juror would have been structural error and that this issue was clearly stronger than the issues postconviction/appellate counsel actually raised.

The trial court did not find that, if the above facts were true, Walker would not have been entitled to relief on his claims. Instead, the court found that Walker did not plead various matters that would support his allegations that Juror 12 remembered Walker from the parking-spot altercation and lied about not knowing him during voir dire. The court faulted Walker for not alleging "when or how long his mother and Juror 12 were neighbors,"[4] "how many total times he interacted with Juror 12," "when (or how long ago) the dispute over the parking space took place," or "how long the dispute lasted." ECF No. 17-8 at pp. 25, 28. The court also noted that the motion left "open" questions such as whether Walker and Juror 12 recognized each other at the time of the altercation. *Id.* at p. 28. Finally, the court found that Walker's allegation that Juror 12 recognized him at trial and lied to the court about knowing him was "conclusory and unsupported by the facts alleged." *Id.* The court did not, however, identify any missing

---

[4] The trial court's finding that Walker did not allege how long his mother and Juror 12 were neighbors was clearly erroneous, as Walker's motion included affidavits stating that Walker's mother and the juror lived in the same duplex for approximately two years. ECF No. 17-9 at pp. 37 & 39 of 46.

fact that Walker could have pleaded to support his allegation that the juror remembered him. Instead, the court noted that Walker himself did not recognize the juror until the second day of trial. But Walker also explained that this was because the juror had grown a full beard since Walker last saw him. Nothing in the motion suggested that Walker had also changed his appearance and that therefore the juror would not have recognized him.

Neither the trial court nor the Wisconsin Court of Appeals cited a case providing a defendant with notice that, to satisfy the five "w's" and one "h" test, he would have to plead the kinds of details the trial court required. Walker alleged the basic facts surrounding the parking-space incident that provided grounds for believing that Juror 12 was biased. He then alleged that Juror 12 recognized him yet lied to the trial court during voir dire. Walker explained his own failure to immediately recognize Juror 12 by pointing to the juror's having grown a beard. Further, Walker could not have provided additional support for his allegation that the juror remembered him without being afforded an evidentiary hearing at which the juror could be examined. Thus, the state courts' conclusions that Walker did not plead sufficient facts to support his allegation that Juror 12 was biased and failed to disclose his knowing Walker was an unexpected and freakish application of the state's pleading rules.

Both the trial court and the court of appeals also faulted Walker for failing to "offer any support" for his allegation that a claim of ineffective assistance of trial counsel based on counsel's failure to raise the juror issue was "clearly stronger" than the claims postconviction/appellate counsel actually raised on direct appeal. *Walker*, 2017 WL 3484968, at *3; ECF No. 17-8 at p. 28 of 30. The court of appeals deemed Walker's

allegation that the juror claim was clearly stronger than the raised claims "meaningless" because Walker failed to include a "comparison to the issues postconviction counsel originally raised" in his motion. *Walker*, 2017 WL 3484968, at *3. Again, however, this was an unexpected and freakish application of the state's pleading rules.

Both the trial court and the court of appeals knew exactly what claims postconviction counsel had raised in her original motion. The trial court explained that "[o]n direct appeal, postconviction counsel filed a well-developed motion, claiming that trial counsel was ineffective for failing to inform the defendant of the definition of sexual intercourse and that the circuit court erred in denying trial counsel's motion to withdraw." ECF No. 17-8 at pp. 28–29 of 30. Likewise, the court of appeals identified the exact claims raised by postconviction counsel in her original motion. *Walker*, 2017 WL 3484968, at *1–2. Walker, in his pro se motion, identified the factual and legal basis for his claim of ineffective assistance based on the juror issue. He also pointed out that if Juror 12 was biased, trial counsel's failure to object would have resulted in structural error. ECF No. 17-9 at p. 35 of 46. Thus, both the trial court and the court of appeals had all the information they needed to meaningfully assess Walker's allegation that the juror issue was clearly stronger than the issues raised by postconviction counsel. Each court could have compared the juror issue to the issues raised and then answered the legal question of whether the juror issue was clearly stronger. Accordingly, the courts' conclusions that Walker was required to provide them with some other "support" for his allegation that the juror issue was clearly stronger than the issues raised was unexpected and freakish.

On the topic of the "clearly stronger" test, I also note that the court's application the test serves to highlight that the state's pleading rules are not "independent" of federal law. In *State v. Starks*, the Wisconsin Supreme Court first adopted this test, concluding that, as a matter of *federal* law, a defendant cannot prevail on a claim that appellate counsel was ineffective in failing to raise an argument on appeal unless the defendant demonstrates that the unraised argument was "clearly stronger" than the raised arguments. 349 Wis. 2d 274, 305–11 (2013). Thus, whenever a Wisconsin court applies the clearly stronger test, it is necessarily answering a question of federal constitutional law: whether the deficient-performance prong of a claim of ineffective assistance of appellate counsel may be satisfied even if an unraised claim was not clearly stronger than the raised claims. As discussed in more detail below, the Wisconsin Supreme Court's negative answer to this question may have been contrary to, or an unreasonable application of, Supreme Court precedent. But for present purposes, the important point is that the "clearly stronger" test depends on a question of federal law, and therefore its application cannot be "independent" of federal law. *See Ake v. Oklahoma*, 470 U.S. 68, 75 (1985) ("when resolution of the state procedural law question depends on a federal constitutional ruling, the state-law prong of the court's holding is not independent of federal law").

Returning to the question of whether the state's pleading rules are "adequate" to support the judgment in this case, I examine the Wisconsin Court of Appeals' final reason for rejecting Walker's claim of ineffective assistance of postconviction counsel, which was his failure "to allege that appellate counsel's failure to raise [the juror issue] cannot be explained or justified." *Walker*, 2017 WL 3484968, at *3. It is true that Walker

did not expressly allege that appellate counsel's failure to raise the juror issue could not be explained or justified. But the specific allegations of his motion added up to such an allegation. After alleging the facts about Juror 12's bias and Attorney Richman's failure to act on this information, Walker alleged that he told Attorney Tempska about the juror issue and that she "knowingly ignor[ed]" it. ECF No. 17-9 at p. 35 of 46. Clearly, in alleging that Tempska "knowingly ignored" his claim of juror bias, Walker was alleging that her failure to raise the issue could not be explained or justified. As discussed below, only if Tempska investigated Walker's claim and determined that it lacked factual support could she have been justified in failing to raise it. Thus, in faulting Walker for failing to expressly allege that Tempska's not raising the juror issue could not be explained or justified, the court of appeals again applied the state's pleading standard in an unexpected and freakish manner.

The court of appeals' unusually strict application of the pleading standard also conflicts with the Wisconsin Supreme Court's directive to construe pro se pleadings liberally. *See, e.g., State ex rel. Kyles v. Pollard*, 354 Wis. 2d 626, 647 (2014). As explained above, Walker's pro se motion alleged everything the court needed know to "meaningfully assess" whether he was entitled to a hearing on his claim that Tempska was ineffective in failing to raise a claim of ineffective assistance of trial counsel based on the juror issue. The deficiencies that the court found were highly formalistic. As discussed, the court faulted Walker for failing to allege that Tempska's failure to raise the juror issue could not be explained or justified, even though Walker in substance alleged that very fact when he alleged that she ignored him when he told her about the issue. The court, in applying the "clearly stronger" test, also faulted Walker for failing to

26

compare the unraised juror issue to the issues counsel actually raised, even though the court was fully aware of the issues counsel actually raised and could have performed the comparison without Walker's pro se assistance. These are not the kinds of shortcomings a court normally holds against a pro se litigant. At the very least, if the state courts deemed Walker's motion procedurally deficient due to his failure to satisfy some formal aspect of the pleading standard, they could have granted him an opportunity to supply the missing information before denying his motion without a hearing. *See Allen*, 274 Wis. 2d at 580 (Wisconsin Supreme Court states that when a postconviction motion does not satisfy the pleading standard, "the circuit court may order the defendant to submit more specific evidence regarding his motion").

For all these reasons, as well as the reasons stated in my prior opinion denying the respondent's motion to dismiss, I conclude that the Wisconsin Court of Appeals' disposition of Walker's claim of ineffective assistance of postconviction/appellate counsel did not rest on an independent and adequate state ground. Moreover, because the Wisconsin Court of Appeals' application of the *Escalona-Naranjo* rule to Walker's claim of ineffective assistance of trial counsel depended on its rejection of Walker's claim that his appellate counsel was ineffective, I cannot at this time dismiss his claim of ineffective assistance of trial counsel as procedurally defaulted. Should Walker prove that his appellate counsel was ineffective in failing to challenge trial counsel's effectiveness with respect to the juror issue, then Walker will have established a "sufficient reason" for his failure to raise this challenge to trial counsel's performance on direct review, and the bar of *Escalona-Naranjo* will not apply. Accordingly, the respondent's motion for reconsideration will be denied.

27

**B.    Merits**

**1.    Ineffective Assistance of Counsel and Juror 12**

Turning to the merits of Walker's claims, I begin with his claim of ineffective assistance of postconviction/appellate counsel. Because the Wisconsin Court of Appeals rejected this claim on the merits, the standard of review in 28 U.S.C. § 2254(d) applies. Under that standard, a federal court may not issue a writ of habeas corpus unless the state court's adjudication of the claim resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

A Sixth Amendment claim of ineffective assistance of appellate counsel is governed by *Strickland v. Washington*, 466 U.S. 668 (1984). *See Smith v. Robbins*, 528 U.S. 259, 285 (2000). Such a claim has two elements. First, the petitioner must show that appellate counsel's performance was deficient, meaning objectively unreasonable. *Id.* Second, the petitioner must show that counsel's deficient performance prejudiced his appeal. To show prejudice, the petitioner must show a reasonable probability that, but for appellate counsel's deficient performance, he would have prevailed on his appeal. *Id.* at 285–86.

Walker alleges that Tempska performed deficiently by failing to claim in the postconviction motion and on appeal that Richman rendered ineffective assistance in failing to inform the trial court of Juror 12's history with Walker. To succeed on this claim, Tempska would have had to satisfy the two elements of *Strickland*, *i.e.*, that

Richman performed deficiently and that Walker was prejudiced as a result. Thus, I begin by discussing Richman's alleged deficient performance.

Walker contends that Richman performed deficiently because he did not alert the trial court to Juror 12's potential bias after Walker informed him of the relevant facts. Walker's claim that Juror 12 was biased implicated his right to an impartial jury, which is protected by the Due Process Clause of the Fourteenth Amendment. *See Morgan v. Illinois*, 504 U.S. 719, 726 (1992). Moreover, due process requires a trial judge who becomes aware of a potential source of bias to conduct a hearing in which the defendant has the opportunity to prove actual bias. *See Smith v. Phillips*, 455 U.S. 209, 215 (1982); *Remmer v. United States*, 347 U.S. 227, 230 (1954); *Oswald v. Bertrand*, 374 F.3d 475, 477–78 (7th Cir. 2004). Thus, if Richman would have informed the trial court of Walker's claim that Juror 12 knew him and previously threatened to kill him, the court would have been required to hold a hearing to determine whether Walker's allegations were true.

Walker's allegations about Juror 12 also implied that Juror 12 had answered a voir dire question incorrectly. During voir dire, the court asked the potential jurors whether anyone knew Walker. No one, including Juror 12, answered that they did. If Walker's allegations about Juror 12 are true, and Juror 12 in fact knew Walker, then his negative answer to the court's question was obviously incorrect. Wisconsin has established a procedure for determining when a juror's incorrect answer to a voir dire question warrants a new trial. *See State v. Wyss*, 124 Wis. 2d 681, 721–32 (1985). Under this procedure, the trial court must hold a hearing, at which, to be awarded a new trial, the defendant must prove: (1) that the juror incorrectly or incompletely responded

to a material question on voir dire; and if so, (2) that it is more probable than not that under the facts and circumstances surrounding the particular case, the juror was biased against the moving party. *Id.* at 726. Walker relied on *Wyss* in his § 974.06 motion and on appeal from the trial court's denial of that motion. However, I note that, technically, the *Wyss* standard applies to a request for a new trial based on potential juror bias that is not discovered until after the trial. In the present case, Walker discovered Juror 12's potential bias *during* the trial and brought it to trial counsel's attention at that time. Still, *Wyss* supports the general principle that a trial court has a duty to hold a hearing when confronted with an allegation of juror bias.

Because trial counsel did not inform the court of Walker's allegations against Juror 12, the trial court did not hold a hearing. Assuming, as I must at this point, that the allegations of Walker's § 974.06 motion are true, trial counsel's failure to act could not have been the result of reasonable trial strategy. The motion alleges that trial counsel told Walker that "it was too late to stop the trial." ECF No. 17-9 at p 34 of 46. The respondent does not argue that trial counsel would have been correct in thinking that it was too late to do anything about Juror 12's alleged bias. Moreover, I am unaware of any rule of procedure in Wisconsin that would have prevented counsel from raising this issue during the trial. Indeed, as noted, Wisconsin has a procedure for raising issues of juror bias that are not discovered until after a verdict is rendered, *see Wyss*, 124 Wis. 2d at 721–32, and thus such an issue could obviously be raised during trial, when it might be possible to cure any prejudice by replacing the biased juror with an alternate. Accordingly, under the facts alleged in Walker's motion, Attorney Richman committed an objectively unreasonable error when he refused to bring Walker's allegations

regarding Juror 12 to the court's attention. Notably, the state court of appeals did not conclude that Richman's failure to object was reasonable, and thus my review of Richman's performance is de novo. *See Toliver v. McCaughtry*, 539 F.3d 766, 775 (7th Cir. 2008). However, even if § 2254(d) applied, it would be satisfied here: based on the allegations of Walker's motion, the only reasonable conclusion is that Richman's failure to raise the juror issue was deficient performance.

As to prejudice, Walker alleges that Richman's error resulted in a biased juror becoming the foreperson of the jury that convicted him. A criminal defendant has a right to be tried before an impartial tribunal, and the denial of this right is not subject to the doctrine of harmless error. *Oswald*, 374 F.3d at 482. Moreover, the federal appellate courts that have considered the question have concluded that when trial counsel's deficient performance results in the impaneling of a biased juror, the defendant has suffered prejudiced from counsel's error. *See Virgil v. Dretke*, 446 F.3d 598, 611–14 (5th Cir. 2006); *Hughes v. United States*, 258 F.3d 453, 463 (2001); *Ruderman v. Ryan*, 484 F. App'x 144, 145 (9th Cir. 2012).

The state court of appeals, however, concluded that Walker could not have been prejudiced by trial counsel's failure to raise the juror issue because the evidence of his guilt was overwhelming. *See Walker*, 2017 WL 3484968, at *5. But, as noted, the impaneling of a biased juror is not subject to the doctrine of harmless error—"[e]ven a clearly guilty criminal is entitled to be tried before an impartial tribunal." *Oswald*, 374 F.3d at 482 (citing, among other cases, *Arizona v. Fulminante*, 499 U.S. 279, 309–10, (1991); *Irvin v. Dowd*, 366 U.S. 717, 722 (1961); and *Tumey v. Ohio*, 273 U.S. 510, 535 (1927)). As the Seventh Circuit has explained,

> If the police, after arresting [a suspect] and obtaining an eyewitness identification of him plus his confession, had taken him directly to the penitentiary on the ground that a trial would be a waste of time for someone so patently guilty, he would be entitled to release on habeas corpus; he would have been deprived of his liberty without due process of law. The Constitution requires (unless the defendant waives his rights) a certain modicum of adversary procedure even if the outcome is a foregone conclusion because the evidence of guilt is overwhelming.

*Walberg v. Israel*, 766 F.2d 1071, 1074 (7th Cir. 1985). Walker made this very point in his § 974.06 motion and on appeal, arguing that the impaneling of a biased juror is "structural error." ECF No. 17-9 at p. 35 of 46; ECF No. 17-8 at p. 10 of 30. But the state did not address this point in its response brief, and the Wisconsin Court of Appeals ignored it. In this court, Walker again raises the argument that the impaneling of a biased juror results in structural error and that therefore the prejudice prong of *Strickland* is satisfied. ECF No. 36 at p. 30 of 34. But the respondent also ignores Walker's claim of structural error in his brief. Instead, he argues that Walker cannot show prejudice because he is clearly guilty. ECF No. 38 at 23–24.

The Fifth Circuit has found a state court's conclusion that a defendant was not prejudiced by an error by counsel that resulted in a biased tribunal to be an unreasonable application of clearly established federal law as determined by the Supreme Court of the United States. *Virgil*, 446 F.3d at 613–14. In reaching this conclusion, the court discussed passages from *Strickland* stressing that the prejudice inquiry focuses on the "fundamental fairness" of the proceeding. *Id.* at 611–14; *see also Strickland*, 466 U.S. at 696 (stating that "the ultimate focus of the [prejudice] inquiry must be on the fundamental fairness of the proceeding whose result is being challenged"). Obviously, the presence of a biased juror destroys the fundamental fairness of a criminal trial. *Virgil*, 446 F.3d at 613 (recognizing "the fundamental nature

of the impartial jury and the consistent line of Supreme Court precedent enforcing it"). Thus, I agree with the Fifth Circuit that a state court unreasonably applies *Strickland* when it concludes that a defendant was not prejudiced by an error that resulted in the impaneling of a biased juror.

The above analysis shows that, if the allegations of Walker's § 974.06 motion are true, Walker had an extremely strong claim of ineffective assistance of trial counsel based on counsel's failing to notify the trial court of Walker's history with Juror 12. Yet postconviction/appellate counsel, Tempska, failed to raise this claim. According to the allegations of Walker's § 974.06 motion, Walker told Tempska about his claim of juror bias and she "knowingly ignor[ed]" it. ECF No. 17-9 at p. 35 of 46. Assuming these allegations are true, the only reasonably conclusion is that Tempska's failure to raise this issue amounted to deficient performance. If Walker told Tempska about his allegations against Juror 12, she obviously would have had a duty to investigate the allegations, such as by asking trial counsel whether Walker told him about these facts and/or investigating whether Juror 12 was the person who lived in Walker's mother's duplex. At this stage, because Walker alleged that he told trial counsel these facts and that Juror 12 was in fact the person who lived in the duplex, I must assume that an investigation would have supported Walker's claim. And because, on the facts alleged, the claim would have been extremely strong, any reasonable attorney would have raised the claim in the postconviction motion and on direct appeal.

One of the reasons the Wisconsin Court of Appeals gave for denying relief on Walker's claim of ineffective assistance of appellate counsel was that Walker failed to show that the ineffective-assistance claim premised on the juror issue was "clearly

33

stronger" than the issues Tempska actually raised in her postconviction motion. But the court's application of the "clearly stronger" test to Walker's claim was contrary to *Strickland*. In applying that test, the court of appeals relied on the Wisconsin Supreme Court's decision in *State v. Starks*, 349 Wis. 2d 274 (2013). In that case, the court held that, to prevail on a claim of ineffective assistance of appellate counsel involving counsel's failure to raise arguments, the defendant, in addition to showing that appellate counsel performed deficiently and that he was prejudiced as a result, must "*also* establish why the unraised claims . . . were 'clearly stronger' than the claims that appellate counsel raised on appeal." *Id.* at 305–06 (emphasis added).

Immediately we see the problem here: In *Starks*, the Wisconsin Supreme Court added a third element to the *Strickland* test for claims of ineffective assistance of counsel involving appellate counsel's failure to raise an argument. But of course, *Strickland* clearly establishes that a claim of ineffective assistance of counsel has only two elements: deficient performance and prejudice. *See Strickland*, 466 U.S. at 687. Moreover, the Supreme Court of the United States has clearly established that *Strickland*'s two-pronged standard governs all claims for ineffective assistance of appellate counsel. *See Smith v. Robbins*, 528 U.S. 259, 285–86 (2000). Thus, the Wisconsin Supreme Court's decision to add a third element to *Strickland* for claims involving appellate counsel's failure to raise an issue was contrary to clearly established Supreme Court law.

In *Starks*, the Wisconsin Supreme Court concluded that the Supreme Court of the United States had "adopted" the clearly stronger standard in *Smith v. Robbins. See Starks*, 349 Wis. 2d at 306. This was an unreasonable reading of *Robbins*. That case

did not involve a claim that appellate counsel was ineffective in failing to raise an issue. Instead, the case involved a claim that appellate counsel was ineffective in filing a no-merit, or *Anders*,[5] brief instead of filing an ordinary merits brief. *Robbins*, 528 U.S. at 284–85. Part of the Court's discussion centered around whether a defendant who alleges that his appellate counsel should have filed a merits brief instead of an *Anders* brief must satisfy both prongs of the *Strickland* test. *Id.* at 285–89. In holding that he must, the Court reasoned that "[i]t is no harder for a court to apply *Strickland* in this area than it is when a defendant claims that he received ineffective assistance of appellate counsel because his counsel, although filing a merits brief, failed to raise a particular claim." *Id.* at 287–88. The Court then observed that satisfying *Strickland* in the *Anders* context would "likely" be easier than in the merits-brief context because, to satisfy *Strickland* in the *Anders* context, "it is only necessary for [the defendant] to show that a reasonably competent attorney would have found one nonfrivolous issue warranting a merits brief." *Id.* at 288. The Court contrasted this showing with *Jones v. Barnes*, 463 U.S. 745 (1983), a case in which the Supreme Court "held that appellate counsel who files a merits brief need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal." *Robbins*, 528 U.S. at 288. The Court noted that, under *Barnes*, "it is still possible to bring a *Strickland* claim based on counsel's failure to raise a particular claim, but it is difficult to demonstrate that counsel was incompetent." *Id.* At this point, the Court cited the Seventh Circuit's decision in *Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1986), in which the court stated that "[g]enerally, only when ignored issues are clearly stronger

---

[5] *Anders v. California*, 386 U.S. 738 (1967).

than those presented, will the presumption of effective assistance of counsel be overcome." The Supreme Court then observed that it will be easier for a defendant to show that counsel unreasonably failed to find at least one issue of arguable merit than to show that counsel failed to raise a nonfrivolous issue that was clearly stronger than the issues counsel did present. *Robbins*, 528 U.S. at 288.

In citing *Gray* and discussing its "clearly stronger" standard, the Supreme Court was not holding that, to succeed on a claim of ineffective assistance of appellate counsel based on the failure to raise an issue, a defendant must *always* show that the unraised issue was clearly stronger than the raised issues. Again, the question of what a defendant must show when challenging appellate counsel's failure to raise an issue was not even presented in *Robbins*, and thus the Court's statements on this point were dicta. Moreover, the Court's dicta cannot reasonably be interpreted to mean that a defendant must always show that the unraised issue was clearly stronger than the raised issues. The Court was simply observing that, in most cases involving an allegation that counsel was ineffective in failing to raise an issue, the defendant will likely have a hard time satisfying *Strickland* because, under *Jones v. Barnes*, counsel does not have an obligation to raise every nonfrivolous issue on appeal. Indeed, the Seventh Circuit case that the Court cited for the "clearly stronger" proposition makes clear that the test will not apply in every case involving counsel's failure to raise an issue. In *Gray*, the Seventh Circuit qualified its statement of the test by using the word "generally." 800 F.2d at 646 ("Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome."). Thus, the Seventh Circuit recognized that there may be instances in which

36

appellate counsel's failure to raise an issue may be deficient performance even though that issue was not clearly stronger than the issues counsel actually raised. The Supreme Court included the word "generally" in its quotation of *Gray*, and therefore it, too, recognized that there may be cases in which appellate counsel's failure to raise an issue will be deficient even though the issue was not clearly stronger than the issues actually raised.

It is not difficult not difficult to imagine cases in which counsel's failure to raise an issue will be deficient performance even if the issue is not clearly stronger than the raised issues. Consider a case in which a trial court commits two serious errors: it instructs the jury that it may draw an adverse inference from the defendant's failure to testify in his own defense, *see Griffin v. California*, 380 U.S. 609 (1965), and it fails to instruct the jury that it may find the defendant guilty only if the state proves all the elements of the offense beyond a reasonable doubt, *see In re Winship*, 397 U.S. 358 (1970). For purposes of this example, assume that the record clearly shows that both errors occurred and that timely objections were made at trial. If, on appeal, counsel raised only one of these issues, no rational jurist could conclude that counsel's failure to raise the other was objectively reasonable. But neither issue could be said to be "clearly stronger" than the other. Thus, the Wisconsin Supreme Court's conclusion that a defendant must *always* show that the unraised issue was clearly stronger than the raised issue produces absurd results.

Based on the allegations of Walker's § 974.06 motion, this is a case in which failing to raise the omitted issue is deficient performance regardless of the comparative strength of the raised issues. As discussed above, Walker's motion alleges that trial

37

counsel's error led to a biased juror serving as the foreperson of the jury. This would have been structural error, and the remedy would have been to vacate Walker's conviction and award him a new trial. Regardless of the strength of the other issues raised on appeal, no rational attorney exercising professional judgment could have failed to raise this issue, which challenged the fundamental fairness of the trial. Of course, if counsel investigated the claim and concluded that it would be difficult to prove at an evidentiary hearing, then perhaps omitting the claim would have been reasonable. But Walker's motion alleges that Tempska did not investigate the claim and instead "knowingly ignor[ed]" the issue when Walker told her about it. ECF No. 17-9 at p. 35 of 46. Thus, at this point, I must assume that if Tempska had pursued the claim, she would have been able to prove that Juror 12 was biased and that trial counsel did not have a reasonable basis for not raising the issue at trial.

Perhaps, in *Starks*, the Wisconsin Supreme Court did not mean to hold that the "clearly stronger" test applies in every case where the defendant challenges appellate counsel's failure to raise an issue. But in this case, the Wisconsin Court of Appeals applied *Starks* to a case in which the unraised issue would have been raised by any reasonably competent attorney regardless of the strength of the other issues (assuming, of course, that the facts alleged in Walker's motion are true). Thus, even if *Starks* did not involve a determination that was contrary to, or an unreasonable application of, clearly established Supreme Court law, the Wisconsin Court of Appeals' decision in Walker's § 974.06 appeal did. Accordingly, I conclude that Walker's motion adequately alleged that Tempska performed deficiently in failing to raise the juror issue in her

postconviction motion and on appeal, and that Walker has satisfied 28 U.S.C. § 2254(d) with respect to this issue.

I also find that, even if it was reasonable for the state court to conclude that Walker was required to satisfy the "clearly stronger" test to succeed on his claim, the state court unreasonably determined that the juror issue was not clearly stronger than the claims Tempska raised. As discussed in more detail below, Tempska raised two issues in Walker's original postconviction motion and on appeal: (1) that the trial court violated Walker's right to be represented by a lawyer with whom he could effectively communicate when it denied trial counsel's motion to withdraw, and (2) that Walker received ineffective assistance of counsel during plea negotiations because counsel failed to adequately explain how the state's evidence satisfied the statutory definition of "sexual intercourse." Neither issue stood much chance of succeeding.

First, with respect to the motion to withdraw, the trial court made an inquiry into Walker's ability to communicate with Richman and found that communication between the two, while strained, had not broken down to the extent that Richman could not effectively represent Walker. To succeed on this issue, Tempska would have had to show that the trial court's denial of the motion to withdraw amounted to an erroneous exercise of its discretion. *See State v. Jones*, 326 Wis. 2d 380, 404–05 (2010). This is a hard standard to meet. Although the record contained some support for Tempska's claim that the quality of communication between Walker and Richman was worse than the trial court let on, the appellate court was required to defer to the trial court's findings on this issue unless it was presented with compelling evidence to the contrary. In contrast, the juror issue, as alleged in Walker's § 974.06 motion, presented a clear

claim of juror bias that resulted in structural error requiring a new trial. Thus, the juror issue was undoubtedly stronger than the motion-to-withdraw issue—again, assuming that the facts alleged in Walker's § 974.06 motion were true and would have had evidentiary support had Tempska conducted an investigation.

The juror issue was also clearly stronger than the ineffective-assistance claim based on trial counsel's failure to explain the definition of "sexual intercourse" and how the state's evidence satisfied that definition. As explained below, Walker's claim that he would have accepted the guilty plea if only he had known how the state's evidence matched the definition of "sexual intercourse" is palpably incredible. Walker rejected the plea offer on the morning of trial. But his trial strategy did not in any way involve arguing that the state's evidence did not show that Walker's sexual contact with the victim rose to the level of "sexual intercourse." Instead, Walker presented an alibi defense and tried to explain the presence of semen on the victim's underwear by suggesting that the victim came into contact with a sanitary pad that Walker's wife supposedly used to wipe Walker's semen off herself a day earlier. This defense was preposterous. Walker's willingness to go to trial with such a flimsy defense shows that he would not have accepted the plea offer even if trial counsel had properly explained the definition of "sexual intercourse." Walker's conduct showed that he wanted to take his chances at trial no matter how slim those chances were. Thus, if the state court had held a hearing on Walker's allegation that he would have pleaded guilty but for counsel's deficient advice, the court would almost certainly have found his testimony incredible. In contrast, the juror issue involved plausible factual allegations that, if true, would have entitled Walker to a new trial. Accordingly, the juror issue, as alleged in Walker's § 974.06

motion, was clearly stronger than the guilty-plea issue. Thus, if the "clearly stronger" test applies here, Walker's motion satisfied it.

Finally, I find that, based on the allegations of Walker's § 974.06 motion, he has shown that Tempska's failure to raise the juror issue resulted in prejudice, and that the Wisconsin Court of Appeals' conclusion to the contrary was based on an unreasonable application of *Strickland*. As discussed above, the Wisconsin Court of Appeals determined that Walker did not suffer prejudice from the errors of trial and appellate counsel with respect to the juror issue because the evidence against him was overwhelming. I have already explained why this determination was unreasonable: an error by counsel that results in a biased tribunal undermines the fundamental fairness of the proceeding and therefore is prejudicial under *Strickland*. *See Virgil*, 446 F.3d at 611–14. Moreover, had Tempska raised and proved that trial counsel's errors resulted in a biased tribunal, the outcome of the postconviction motion and direct appeal would have been different: Walker's conviction would have been vacated, and he would have been granted a new trial. Accordingly, if the allegations of Walker's postconviction motion are true, he was prejudiced by Tempska's deficient performance.

Before moving on, I address an additional argument raised by the respondent, which is that Tempska could not have been ineffective in failing to raise the juror issue on direct appeal because the Wisconsin Court of Appeals rejected the issue in its decision on Walker's § 974.06 appeal. *See* ECF No. 38 at 20–22. The respondent contends that appellate counsel cannot be ineffective in failing to raise an issue on direct appeal that the state court later rejects on collateral review.

Some Seventh Circuit cases suggest that when a state court rejects a claim on collateral review, a habeas petitioner cannot succeed on a claim that his appellate counsel was ineffective in failing to raise the claim on direct appeal. *See Richardson v. Lemke*, 745 F.3d 258, 272–73 (7th Cir. 2014); *Stone v. Farley*, 86 F.3d 712, 717 (7th Cir. 1996). The rationale for this approach is that counsel's failure to raise the claim could not have been prejudicial if the state court would have rejected the claim even if counsel had raised it. *Id.* at 717. But no Seventh Circuit case holds that when a state court *erroneously* rejects a federal claim on collateral review, the petitioner cannot show prejudice from appellate counsel's failure to raise the claim on direct review. Moreover, *Strickland* instructs that, when assessing prejudice, a court must presume "that the judge or jury acted according to law." 466 U.S. at 694. As discussed above, if appellate counsel had raised the juror issue in Walker's postconviction motion and proved the facts alleged in Walker's § 974.06 motion, the trial court, following federal law, would have been required to grant Walker a new trial. Or, if the trial court failed to do so, the court of appeals, following federal law on direct appeal, would have been required to reverse the denial of the postconviction motion. Thus, if Tempska had raised the issue and the state courts had followed federal law, the outcome of the appeal would have been different: Walker would have been granted a new trial. The fact that the state courts, on collateral review, rejected the juror claim based on determinations that were contrary to, and involved unreasonable applications of, clearly established federal law, does not prevent Walker from showing that he was prejudiced by Tempska's error.

In sum, I conclude that Walker's § 974.06 motion alleged facts that, if true, would entitle him to relief on his claim of ineffective assistance of postconviction/appellate

counsel, and that the state court's rejection of the claim without holding an evidentiary hearing resulted in a decision that was contrary to, and involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the Untied States. Because § 2254(d) has been satisfied, I may now review the claim de novo. *See, e.g., Mosley v. Atchison*, 689 F.3d 838, 844 (7th Cir. 2012). Moreover, because Walker diligently sought an evidentiary hearing in state court on collateral review, § 2254(e)(2) does not prevent me from holding an evidentiary hearing. *See Ward v. Jenkins*, 613 F.3d 692, 698 (7th Cir. 2010). Accordingly, I will set this matter for an evidentiary hearing, at which Walker will have the opportunity to prove the facts alleged in his § 974.06 motion.

If Walker proves his claim of ineffective assistance of postconviction/appellate counsel, he will be entitled to habeas relief on that claim. Moreover, he will have shown cause for, and established prejudice stemming from, his procedural default of his claim of ineffective assistance of trial counsel based on the juror issue, and therefore I will be able to review that claim on the merits. *See, e.g., Thompkins v. Pfister*, 698 F.3d 976, 987 (7th Cir. 2012). My review of the claim involving trial counsel will also be de novo, for, as explained above, the standard of § 2254(d) is satisfied with respect to that claim. The claim of ineffective assistance of trial counsel is "nested" within Walker's claim of ineffective assistance of postconviction/appellate counsel, and therefore the evidentiary hearing will determine the outcome of both claims.

Because an evidentiary hearing is needed and Walker does not appear capable of conducting it on his own, I will *sua sponte* reconsider my earlier decision denying his motion for appointed counsel. *See* ECF Nos. 13, 18 & 19; *Pruitt v. Mote*, 503 F.3d 647,

43

654–55 (7th Cir. 2007). I find that appointing counsel is in the interest of justice and that therefore counsel may be appointed under 18 U.S.C. § 3006A(2)(B). *See also* Rule 8(c), Rules Governing § 2254 Cases ("If an evidentiary hearing is warranted, the judge must appoint an attorney to represent a petitioner who qualifies to have counsel appointed under 18 U.S.C. § 3006A.").

I note that Walker has filed a motion to supplement the record with newly discovered evidence supporting his claim that Tempska ignored trial counsel's failure to raise the juror issue. *See* ECF No. 31. Because I am granting Walker an evidentiary hearing, I will deny this motion as moot. Walker may share his evidence with appointed counsel, and then counsel may decide whether to present it at the hearing.

### 2. Ineffective Assistance During Plea Negotiations

I next address Walker's claim that his trial counsel rendered ineffective assistance during plea negotiations by failing to explain the definition of "sexual intercourse" and how the state's evidence satisfied that definition, which caused him to reject a favorable plea offer. In order to succeed on an ineffective-assistance claim involving the rejection of a plea offer, a defendant must prove that (1) his counsel's performance prior to and during the plea negotiations was objectively deficient and (2) he was prejudiced by this performance because a reasonable probability existed that he would have accepted the plea but for his counsel's deficient performance. *Lafler v. Cooper*, 566 U.S. 156, 163–64 (2012); *Quintana v. Chandler*, 723 F.3d 849, 853 (7th Cir. 2013). On direct appeal, the Wisconsin Court of Appeals found that Walker had failed to show prejudice, but it did not address whether counsel's performance was deficient. Therefore, I review the deficient-performance prong do novo and the prejudice

prong under 28 U.S.C. § 2254(d). *See Tolliver*, 539 F.3d at 775. Because I find that the court of appeals' finding of no prejudice was correct, I too will omit discussion of the deficient-performance prong.

The Wisconsin Court of Appeals described the facts of the plea offer and Walker's rejection of it as follows:

> On the first day of trial, the prosecutor and defense counsel twice put on the record an offer for Walker to plead guilty to second-degree sexual assault of a child. The first discussion occurred before the parties began picking a jury. The second occasion was during a break from voir dire. During this colloquy, the prosecutor included a recommendation for four to six years of incarceration. Walker specifically rejected this offer. The parties completed voir dire and selected the jury, after which the court took a short break for the parties to review the preliminary instructions. Following that break, the court instructed the jury on the definition of sexual intercourse.

*State v. Walker*, 2014 WL 4192791, at *1. As I explained in the background section, Walker alleged in his postconviction motion that, during the times when the prosecutor's plea offer was on the table, Walker misunderstood the statute's definition of "sexual intercourse" and how the physical evidence supported the state's case. The statute defined "sexual intercourse" as any intrusion, however slight, of any part of a person's body into the genital opening of another, and it specified that the emission of semen is not required. *See* Wis. Stat. § 948.01(6). According to the motion, Walker believed that, to prove him guilty, the state was required to show that Walker fully inserted his penis into the victim's vagina, repeatedly thrusted his penis inside her vagina, and ejaculated semen inside her vagina. Walker claimed that he believed the state's physical evidence did not show that Walker did these things. He alleged that although the state's evidence showed some damage inside the victim's vagina and semen on the victim's underwear, he believed the state had to show that the victim sustained greater damage to her

vagina than was found and that semen was present inside her vagina. Walker alleged that, had trial counsel explained the definition of "sexual intercourse" to him and how the state's physical evidence matched the definition, he would have accepted the prosecutor's offer to reduce the charge to second-degree sexual assault of a child.

The Wisconsin Court of Appeals concluded that "the record conclusively demonstrates Walker would have proceeded to trial and continued to claim his innocence whether or not counsel informed him that sexual intercourse did not require penetration or the emission of semen." *State v. Walker*, 2014 WL 4192791, at *1. I cannot say that this conclusion involved a determination that was contrary to, or involved an unreasonable application of, clearly established Supreme Court law or was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. As I discussed in the context of the "clearly stronger" test, Walker's actions on the first day of trial showed that he was determined to go to trial even though the odds of an acquittal were extremely slim. Walker's semen was found in the victim's underwear, and a physical examination found vaginal injuries consistent with sexual intercourse. Walker did not put on a defense that attacked the state's ability to satisfy the definition of "sexual intercourse." Instead, he presented a weak alibi defense—that he was asleep in bed with his wife at the time of the alleged assault— along with an extremely implausible explanation for how his semen was found on the victim's underwear—that the victim had been playing in the garbage and might have encountered the sanitary pad that his wife had used to wipe off Walker's semen a day earlier. This defense stood virtually no chance of succeeding, even if the state had to prove full insertion of a penis and emission of semen inside the vagina. Walker's

46

willingness to reject a favorable plea offer and proceed to trial with such a flimsy defense shows that he would have rejected the plea offer even if he understood the definition of "sexual intercourse" and how the state's evidence matched the definition. *See Quintana v. Chandler*, 723 F.3d 849, 856 (7th Cir. 2013) (noting that "even in the face of a favorable plea offer and unfavorable facts, some defendants might still advance to trial, swearing they are innocent and thinking they can succeed against the state"). At the very least, the state court did not unreasonably determine the facts in concluding that the record showed Walker was determined to take his chances with the jury no matter how strong the state's case might be.

I note that the state courts made the factual finding that Walker's misunderstanding of the definition of "sexual intercourse" did not affect his decision to reject the plea without holding an evidentiary hearing. They did so despite Walker's express allegation in his motion that, had he understood how "sexual intercourse" was defined and how the state could prove it, he would have accepted the plea offer. ECF No. 33-2 at p. 61 of 103. But this form of factfinding without an evidentiary hearing is not contrary to federal law. Indeed, federal courts may reject a habeas petition without holding an evidentiary hearing where a petitioner's factual allegations are "palpably incredible." *Machibroda v. United States*, 368 U.S. 487, 495 (1962); *Williams v. United States*, 879 F.3d 244, 248 (7th Cir. 2018); *Small v. Endicott*, 998 F.2d 411, 414 (7th Cir. 1993). The Seventh Circuit has applied this rule to a petitioner's allegation that he would have made a different decision during plea bargaining but for trial counsel's ineffectiveness. *See Williams*, 879 F.3d at 249. In that case, the court determined that the district court properly rejected a petition under 28 U.S.C. § 2255 without an

evidentiary hearing even though the petitioner alleged that, but for counsel's error, he would have rejected the plea offer. *Id.* The court found the allegation "palpably incredible" and determined that it could be rejected without a hearing. *Id.* Similarly, the state courts reasonably determined that Walker's allegation of prejudice was palpably incredible in light of his demonstrated willingness to proceed to trial with an extremely implausible alibi defense.

For these reasons, Walker's claim based on trial counsel's performance during plea negotiations (ground two of the petition) will be dismissed on the merits.

### 3. Denial of Trial Counsel's Motion to Withdraw

Walker's remaining claim is that the trial court erroneously exercised its discretion when it denied trial counsel's motion to withdraw. Initially, I note that, to the extent this claim is based on the trial court's exercise of discretion under state law, it is not cognizable on federal habeas review. Only claims based on federal law are so cognizable. *See* 28 U.S.C. § 2254(a); *Arnold v. Dittmann*, 901 F.3d 830, 835 n.1 (7th Cir. 2018). Thus, Walker may succeed on this claim only if he shows that the trial court's denial of the motion to withdraw had the effect of depriving him of his right to counsel under federal law. Moreover, because the Wisconsin Court of Appeals addressed this claim on the merits, I may grant relief only if Walker shows that the court's adjudication of the claim resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d).

48

In his opening merits brief, Walker did not cite a Supreme Court case that applies to this claim. After the respondent identified this deficiency in his response brief, Walker, in his reply brief, cited *Powell v. Alabama*, 287 U.S. 45 (1932), and *United States v. Cronic*, 466 U.S. 648 (1984). As is relevant to the present case, these cases stand for the proposition that a criminal defendant is presumed to be prejudiced by the actual or constructive denial of the assistance of counsel altogether. *See Strickland*, 466 U.S. at 692. Here, Walker seems to be arguing that communication between him and Richman was so strained that Richman could not meaningfully represent him, which resulted in the constructive denial of counsel altogether.

As discussed above, the trial court held a hearing on Richman's motion to withdraw and found that Walker and Richman could communicate to the extent necessary for meaningful representation. The Wisconsin Court of Appeals upheld this finding on appeal. Walker challenges the state courts' findings, but I may grant habeas relief only if such findings were unreasonable in light of the evidence presented in state court. 28 U.S.C. § 2254(d)(2). Here, the state courts' findings were reasonable. Although the evidence revealed that the relationship between Walker and Richman was strained, it did not show that Richman could not effectively represent Walker. At the hearing, the trial court asked Richman if another lawyer could do anything more for Walker than he was doing, and counsel answered that he could not think of anything. *See State v. Walker*, 2014 WL 4192791, at *4. Richman then presented Walker's alibi defense at trial. Of course, Walker alleges that Richman committed several errors, including failing to object to Juror 12 and to properly advise him during plea bargaining.

But even if those errors occurred, they would not show that Walker was constructively denied effective counsel altogether.

Accordingly, Walker's claim involving the denial of Richman's motion to withdraw (ground one of the petition) will be dismissed on the merits.

### III. CONCLUSION

For the reasons stated, **IT IS ORDERED** that the respondent's motion to reconsider my denial of his motion to dismiss (ECF No. 30) is **DENIED**.

**IT IS FURTHER ORDERED** that the petitioner's motion to submit newly discovered evidence (ECF No. 31) is **DENIED** as **MOOT**.

**IT IS FURTHER ORDERED** that grounds one and two of the petition are **DISMISSED** on the merits.

**IT IS FURTHER ORDERED** that petitioner is entitled to an evidentiary hearing on ground three of his petition. By separate order, I will appoint counsel to represent the petitioner at the hearing. The evidentiary hearing will be scheduled once counsel has entered an appearance.

Dated at Milwaukee, Wisconsin, this 4th day of September, 2019.


s/Lynn Adelman_____
LYNN ADELMAN
United States District Judge